# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| MICHAEL MENDELL,<br><br>  Plaintiff,<br><br>  v.<br><br>AMERICAN MEDICAL RESPONSE, INC.,<br><br>  Defendant. | Case No. 19-cv-01227-BAS-KSC<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S MOTION TO STRIKE EVIDENCE (ECF No. 70); AND**<br><br>**(2) PERMITTING SUR-REPLY TO PLAINTIFF'S MOTION TO CERTIFY CLASS** |
|---|---|

Plaintiff Michael Mendell brought this putative class action for damages and injunctive relief against Defendant American Medical Response, Inc. (AMR), alleging that AMR made unauthorized recordings of conversations with Plaintiff and putative class members without providing notification or warning required under the California Invasion of Privacy Act (CIPA), Cal. Penal Code §§ 630 *et seq.* AMR moves to strike the declarations of Mendell's counsel and expert witness, which Mendell filed in support of his reply to the motion to certify class. (ECF No. 70.) For the following reasons, the Court **DENIES** AMR's motion but permits AMR to file a sur-reply limited to the issue of class identification.

## I.  BACKGROUND

### A. Mendell's Motion to Certify Class and Hansen Declaration I

On June 5, 2020, Mendell moved to certify class. (Mot. to Cert. Class, ECF No. 49.) Mendell proposed the following class definitions:

**The HIPAA Confidential Communication Class**
All persons in California, that never called Defendant, whose first call from Defendant was recorded without their consent by Defendant and/or its agent/s from July 1, 2018 through July 31, 2019 (the date when AMR modified its practice to notify callers of recording at the outset of the call.)

**The Cellular Phone Communication Sub-Class**
All persons in California, that never called Defendant, whose first call from Defendant to their cellular phone was recorded without their consent by Defendant and/or its agent/s from July 1, 2018 through July 31, 2019 (the date when AMR modified its practice to notify callers of recording at the outset of the call.)

(Mot. to Cert. Class at 2:14–25.)

Mendell attached to his motion a declaration of his expert witness, Jeffrey A. Hansen, dated June 4, 2020. (Hansen Decl., "Hansen Decl. I," ECF No. 49-18.) Hansen was retained to analyze AMR's phone call records to (1) identify and manage the class and (2) advise Plaintiff's counsel on the capabilities of the software system used by AMR's third-party vendor, LiveVox, Inc., who managed the phone call records for AMR. (Hansen Decl. I ¶ 7.) Specifically, Hansen was retained to advise "what types of information and reports regarding the makeup and identity of the class can be gleaned from the data maintained by the LiveVox system." (*Id.*) Hansen stated that he was "extremely familiar with the LiveVox system" and thus was qualified to advise Mendell about the system.[1]

---

[1] Hansen stated in full:
I am extremely familiar with the LiveVox system and can provide advice and consultation regarding how the call detail records may be utilized to (1) identify the date of the call; (2) identify the length of the call; (3) identify the phone number called; (4) identify whether the phone number called is a cellular phone or landline phone; (5) identify if the area code for the person called is a California area code; (6) identify whether the call was inbound or outbound; (7) identify whether outbound calls resulted in leaving a message or speaking

- 2 -

19cv1227

Hansen proposed a methodology to identify the class. (Hansen Decl. I ¶¶ 14–32.) At that time, LiveVox had not produced the call records in response to Mendell's subpoena. (*Id.* ¶ 17.) Hansen relied on his knowledge of the LiveVox system to state that the system can generate a report with different fields that would allow him to identify "which of the Call Records were first time outbound calls, to patients that never called AMR, and identify the subset of such first-time outbound calls to wireless numbers." (*Id.* ¶ 18.) In addition, Hansen stated that he could supplement the class identification process by transcribing the audio recordings of the phone calls at issue, using a tool called IBM Watson.[2]

### B. AMR's Deposition of Hansen

On July 3, 2020, AMR deposed Hansen. (Ex. 20 to Def.'s Resp. in Opp., ECF No. 60-1 at 43–126.[3]) AMR questioned Hansen about his experience in using IBM Watson.

---

> with a person; (8) identify whether a person to person conversation was a first time or subsequent conversation.

(Hansen Decl. I, ¶ 8.)

[2] Hansen stated in full:
> At the same time, I will take all the mp3 audio files produced and have them electronically transcribed through the use of an artificial intelligence engine, specifically employing IBM Watson. This will create a full transcription of all the call recordings. The transcriptions will be loaded into a database and analyzed by automated searching for specific text such as "patient business services" or "customer care" or "recorded" etc. I can search all the recordings for any term requested in a matter of seconds. I can group recordings by the name of the person called or the script that was used etc. Using the LiveVox report containing the original mp3 file name, the date, time, number called etc, I will link each outbound call transcript to the corresponding calls/entries on the report. Automated queries can easily identify a list of calls which were the first call placed to a California area code and that list of calls can be analyzed systematically. Each identified call can be categorized by which script was used, if the recording warning was given and when. Calls that went to an answering machine or disconnected number for example can systematically be excluded. Once this is complete, a full and accurate list of all class members will be identified. A further analysis can be conducted, as described below, to separate calls to landlines versus to cell phones.

(Hansen Decl. I ¶ 19.)

[3] Defendant's exhibits filed in support of its response in opposition are marked by multiple paginations. (ECF No. 60-1.) All citations follow the page numbers that immediately follow the marker, "COMPENDIUM OF EVIDENCE REDACTED PAGE."

(*Id.* at 67–71, 110–16.)  AMR then asked Hansen about class identification, to which Hansen testified, in relevant part:

> [T]he analysis is extremely simple.  Okay.  And that is that it has a date and a time. So I could create a query that says basically to identify all of those people that received an outbound call where the word record never showed up within the transcript and they never called, in [sic] they got on and made a recording on an inbound call.

(*Id.* at 83.)

### C. AMR's Opposition to the Motion to Certify Class

On August 4, 2020, AMR filed its response in opposition to Mendell's motion to certify class.  (Def.'s Opp., ECF No. 60.)

#### 1. AMR's Arguments on Class Identification

AMR argued that the Court should deny Mendell's motion for class certification because, among other reasons, Mendell had not set forth a feasible methodology to identify the class.  AMR pointed out that three different versions of the standard opening script were used by call representatives during the relevant class period—July 1, 2018, through July 31, 2019—and that more than one transcript was used during certain periods within the class period.  (Def.'s Opp., at 5–6.)  The first transcript ("PBS 1") was used between July 1, 2018, and July 31, 2019; the second ("PBS 2") between July 15, 2018, and July 31, 2018; and the third ("CC") after April 2019.  (*Id.* at 5:13–6:13.)

In addition, AMR argued that "short of deposing every class member, or engaging in additional burdensome discovery (including for non-party collection agencies), neither Plaintiff nor AMR can determine who is a member of the putative class."  (Opp. at 32:22–24.)  As a part of that argument, AMR pointed out that IBM Watson was not compliant with the Health Insurance Portability and Accountability Act (HIPAA) and thus could not be utilized as proposed by Hansen.  (*Id.* at 33:4–9.)  AMR also pointed out that IBM Watson

was not a reliable tool to transcribe the phone recordings due to the known error rate and that Hansen did not explain how such errors could be mitigated. (*Id.* at 33:10–15.)

### 2. AMR's Arguments on Adequacy of Class Representative

AMR argued that Mendell is not an adequate class representative because, among other reasons, he has a pending state court action against AMR filed in July 2019 that arises from the same set of operative facts in the federal action. (Opp. at 8:20 n.4, 31:11–14.) Because of the pending state court action between the same parties, AMR argued that Mendell has a conflict of interest and cannot be entrusted to litigate the putative class action in federal court as a class representative.

## D. Mendell's Reply

Mendell filed a reply in support of his motion to certify class. (Pl.'s Reply, ECF No. 67.)

### 1. Mendell's Arguments on Class Identification and Hansen Declaration II

Mendell argued in his Reply that narrowing the class period can address any concerns about the alleged overlap of the periods when the three transcripts were used because only PBS 2 was used between August 1, 2018, through March 31, 2019. (Reply at 3–4.) Mendell also argued that it is feasible to identify the class members that fit the definition of the narrowed class and sub-class, relying on a supplemental declaration of Hansen, dated September 13, 2020. (Hansen Decl., "Hansen Decl. II," ECF No. 67-5.) By that time, LiveVox had produced the call records data, and Hansen's supplemental declaration discussed how the class members can be identified using the LiveVox data.

//
//
//

(*Id.* ¶¶ 6–42.) Hansen set forth the following ten-step identification process:

> [1]. Identify patient phone numbers associated with all AMR calls.
> [2]. Identify the numbers with California area codes.
> [3]. Identify dates of the calls.
> [4]. Identify which calls were inbound and outbound.
> [5]. Identify entries where the first call was an outbound call from AMR.
> [6]. Remove calls prior to August 1, 2018.
> [7]. Remove calls after March 31, 2019.
> [8]. Remove calls to a wrong numbers [sic], third parties, calls that did not connect, calls to answering machines or voicemail, to busy numbers, etc.
> [9]. Identify which calls were to cell phones or land lines.
> [10]. Identify which calls have recordings that were produced by AMR.

(*Id.* ¶ 8).

### 2. Mendell's Arguments on Adequacy and the Shay Declaration

As to AMR's argument that Mendell's pending state court action created a conflict of interest, Mendell argued that he had demonstrated his fidelity to the class by refusing AMR's settlement offer that would have required him to enter a "broad general release" of the class claims. (Reply at 11–19.) Mendell attached the declaration of his counsel, Daniel Shay, who stated the following as to AMR' alleged actions in state court:

> 3. In addition to this class action, Plaintiff is pursuing an individual case in State Court against American Medical Response, Inc. ("Defendant") for violations of The Rosenthal Fair Debt Collection Practices Act Cal. Civ. Code § 1788 et seq "(RFDCPA") [sic].
> 4. On February 12, 2020, Plaintiff's counsel served an Offer to Compromise Pursuant to California Code of Civil Procedure § 998 in that State case.
> 5. The offer was $1,000 statutory damages paid to Plaintiff plus fees and costs.
> 6. Defendant rejected that offer and insisted on a "broad general release" releasing the claims in this class action as well.
> 7. To me, it seemed as though Defendant was attempting to force Plaintiff to "throw the class under the bus" so to speak by making him drop the putative class action and release all his claims which would have meant the class would not receive any benefit.
> 8. I think Defendant attempted to create and take advantage of a "conflict" and tried to trap Plaintiff so it could portray him as an inadequate class representative.

> 9. Defendant pressured Plaintiff to breach his fiduciary obligations to the class and solicited him to do so.
> 10. To this date, Plaintiff continues to rebuke Defendant's coercion and has acted exactly as he should as a representative of a putative class.

(Shay Decl. ¶¶ 3–10, ECF No. 67-4.)

### E. AMR's Motion to Strike Mendell's Reply

On October 1, 2020, AMR filed the present motion to strike Mendell's evidence submitted on Reply, arguing that the supplemental declaration of Hansen should be stricken as untimely and that the Shay Declaration should be stricken as untimely and prejudicial. (Mot. to Strike, ECF No. 70.) Mendell filed a response in opposition to the motion to strike (ECF No. 72) and AMR filed a reply. (ECF No. 73.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). AMR's motion to strike is ripe for decision.

## II. ANALYSIS

### A. Hansen Supplemental Declaration

AMR argues that Mendell's reply to the class certification motion "relies on a new and novel opinion" raised in the supplemental declaration of Hansen, in which "Hansen . . . opine[d] for the first time that class membership can purportedly be determined by a new 'ten (10) step process' search from the LiveVox data produced." (Mot. to Strike at 7:11–14.) Under Federal Rules of Civil Procedure, "[a]ny affidavit supporting a motion must be served with the motion." Fed. R. Civ. P. 6(c)(2). In addition, a party's reply brief filed in support of the motion should be limited to matters raised in the opposition papers or unforeseen when the party filed the original motion. *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018). "'New evidence submitted as part of a reply is improper' because it does not allow the defendant an adequate opportunity to respond." *Id.* (citing *Morris v. Guetta*, No. LA CV12-00684 JAK, 2013 WL 440127, at

1   \*8 (C.D. Cal. Feb. 4, 2013)).  "[T]he district court may decline to consider new evidence
2   or arguments raised in reply, and generally 'should not consider the new evidence without
3   giving the non-movant an opportunity to respond.'" *Id.* (citing *Provenz v. Miller*, 102 F.3d
4   1478, 1483 (9th Cir. 1996)); *see also Beaird v. Seagate Tech.*, Inc. (10th Cir. 1998) 145
5   F3d 1159, 1164–1165 (holding that "when a moving party advances in a reply new reasons
6   and evidence in support of its motion . . . , the nonmoving party should be granted an
7   opportunity to respond").

8   Here, Hansen's initial declaration (Hansen Decl. I) already stated that the phone
9   records produced by LiveVox could be used to generate a report with different fields to
10  identify "which of the Call Records were first time outbound calls, to patients that never
11  called AMR, and identify the subset of such first-time outbound calls to wireless numbers."
12  (Hansen Decl. I ¶ 18.)  AMR had the opportunity to depose Hansen about how he would
13  use the LiveVox phone records.  To the extent that the ten-step process that Hansen
14  articulated in the supplemental declaration was presented to AMR for the first time, it was
15  in response to AMR's argument that Plaintiff's proposed class identification procedure is
16  not feasible. "Evidence submitted in direct response to evidence raised in the opposition, .
17  . ., is not 'new.'" *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 955 (C.D. Cal. 2015),
18  *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), *and aff'd*
19  *sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017).

20  Further, because Mendell did not have access to the LiveVox call records at the time
21  of his filing of the motion, Mendell did not exceed the permissible scope of the reply brief
22  by attaching Hansen's supplemental declaration discussing the details of the data that was
23  made available to Hansen. *See Townsend*, 303 F. Supp. 3d at 1027 (holding that a party
24  could include in the reply brief matters that were unforeseen when the party filed the
25  original motion).  Therefore, the Court denies AMR's request to strike the supplemental
26  declaration of Hansen.

27  //
28  //

### B. Shay Declaration

AMR argues that the Shay Declaration should be stricken because it is impermissible new evidence and violates several evidentiary rules. As an initial matter, the allegations raised in the Shay Declaration are not new because they respond to AMR's allegation that Mendell has a conflict of interest due to the pending state court action. *See In re ConAgra Foods*, 90 F. Supp. 3d at 955 (holding that evidence submitted in direct response to evidence raised in the opposition is not new). The Court thus declines to strike the Shay declaration on that basis.

The Court next turns to AMR's evidentiary objections raised against the Shay Declaration. Because class certification is a preliminary procedure, it "is not accompanied by the traditional rules and procedures applicable to civil trials." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). For this reason, at the class certification stage, the Court may consider evidence not admissible at trial. *See Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010). Therefore, the Court overrules AMR's evidentiary objections.

The Court denies AMR's motion to strike Shay's declaration.

### C. Sur-Reply

A decision to grant or deny leave to file a sur-reply is generally committed to the "sound discretion" of the court. *See Brady v. Grendene USA, Inc.*, No. 3:12-cv-0604-GPC-KSC, 2015 WL 6828400, at *3 (S.D. Cal. Nov. 6, 2015); *United States v. Venture One Mortg. Corp.*, No: 13-CV-1872 W (JLB), 2015 WL 12532139, at *2 (S.D. Cal. Feb. 26, 2015). Such discretion "should be exercised in favor of allowing a sur-reply only where a valid reason for such additional briefing exists." *Hill v. England*, No. CVF05869 RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005). A court may permit a sur-reply "in the interest of fairness" even where the "reply brief [is] largely responsive to issues raised by [the opposing party] in its opposition" brief. *Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2015 WL 5604400, at *3 (S.D. Cal. Sept. 23, 2015).

Here, the Court finds that it would be in the interest of fairness to allow AMR to respond to the final class identification method set forth in Mendell's Reply and in Hansen's supplemental declaration. AMR has raised an unopposed allegation that Mendell's own delay in serving LiveVox with a subpoena caused the delay in LiveVox's production of the phone records. (Mot. to Strike at 4.) Under these circumstances, the Court finds that AMR should be given an opportunity to brief the merits of the final class identification procedure proposed by Mendell. Although AMR asks for another opportunity to depose Hansen, the court finds that another deposition is neither merited nor necessary.

### III. CONCLUSION

Defendant's motion to strike (ECF No. 70) is **DENIED**.

In the interest of fairness, the Court will provide Defendant an opportunity to respond to Plaintiff's Reply only as to the proposed class identification procedure. Defendant may move to file a sur-reply on or before **Wednesday, February 10, 2021**. Defendant must attach a proposed sur-reply, not to exceed **five pages**, to its motion to file a sur-reply.

**IT IS SO ORDERED.**

**DATED: February 2, 2021**

Hon. Cynthia Bashant
United States District Judge