UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MENDELL,<br><br>         Plaintiff,<br><br> v.<br><br>AMERICAN MEDICAL RESPONSE, INC.,<br><br>         Defendant. | Case No. 19-cv-01227-BAS-KSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SEAL (ECF No. 80)** |

**I. BACKGROUND**

In this putative class action that Plaintiff Michael Mendell brings against American Medical Response, Inc. ("AMR"), the parties each filed several motions to file under seal certain documents in support of or opposition to Mendell's motion for class certification. (ECF Nos. 47, 59, 65.) The Court denied the motions without prejudice and directed the parties to reapply for a sealing order. (ECF No. 75.) AMR filed an amended motion to file documents under seal. (ECF No. 80.) The Court finds the motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1).

//
//
//

## II.     LEGAL STANDARD

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135.  The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102.  When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id.* at 1096–98.  When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id.*

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exists when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598).  However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* (citing *Foltz*, 331 F.3d at 1136).  The decision to seal documents is "one best left to the sound

discretion of the trial court" upon consideration of "the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

## III.   ANALYSIS

AMR moves to file under seal documents in support of or opposition to Mendell's motion for class certification. (ECF No. 80.)  A motion for class certification is "more than tangentially related to the merits of [the] case," and therefore "compelling reasons" must be shown to seal the documents attached thereto.  *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 586 (N.D. Cal. 2020) (applying the "compelling reasons" standard to class certification motion).

In the previous Order, the Court found that the parties' motions to seal were not supported by sufficient factual evidence to satisfy the "compelling reason" standard. (Order, ECF No. 75.)  AMR's amended motion supplements the factual evidence, which demonstrates specific harm that would result from the disclosure of the documents and narrows the scope of the requested sealing order.  The Court grants AMR's amended motion for the reasons stated below.

### A.   Competitive Business Information of Third-Party Collection Agencies

AMR seeks to file under seal confidential business information of four third-party collection companies that contract with AMR: Centrex Revenue Solutions, LLC ("Centrex"), Credence Resource Management ("Credence"), Bay Area Credit Services ("BACS"), and Wakefield & Associates ("Wakefield").  Compelling reasons may exist if sealing is required to prevent documents from being used "as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. "[A] trial court has broad discretion to permit sealing of court documents for, inter alia, the protection of 'a trade secret or other confidential research, development, or commercial information.'" *GPNE Corp. v. Apple Inc.*, 2015 WL 4381244, at *1 (N.D. Cal. July 16, 2015) (quoting Fed. R. Civ. P. 269(c)(1)(G)); *see also Bauer Bros. LLC v. Nike, Inc.*, No.

09cv500–WQH–BGS, 2012 WL 1899838, *2 (S.D. Cal. May 24, 2012) (finding compelling reasons to seal because "public disclosure of Nike's confidential business materials . . . could result in improper use by business competitors seeking to replicate Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development").

### 1.     Centrex

AMR seeks to file under seal three documents that contain confidential business information of Centrex, attached as Exhibits 7, 9, and 12 to the declaration of Neal Marder ("Marder Declaration").

<u>Exhibit 7.</u>   Exhibit 7 is a transcript of the deposition of John Connolly. Connolly is an executive at Centrex. (Foust Decl. ¶ 12, ECF No. 80-2 at 155.[1]) AMR seeks to redact pages 18–19, 50–56 of the copy of the deposition transcript, which allegedly contain confidential business information. As evidence, AMR offers a declaration of Eric Foust, who is the President of Centrex. (Foust Decl., ECF No. 80-2 at 152–58.) Foust states that the redacted portions of Connolly's deposition discuss "Centrex's proprietary methods and processes that differentiate Centrex from its competitors," including (1) "how and when Centrex receives billing and collections information from its client (AMR)"; (2) a description of "Centrex's proprietary system for processing that information"; and (3) "Centrex's proprietary processes and workflows for various collections scenarios . . . [not limited to] Centrex's use of multiple confidential third party vendors." (Foust Decl. ¶¶ 13, 15–16.)

<u>Exhibit 9.</u>   AMR seeks to file under seal the deposition transcript of Dr. Bhaskar Patil, who is an executive of an organization with which Centrex contracts to outsource staffing services. (Foust Decl. ¶¶ 7, 18.) AMR alleges that certain parts of the transcript[2]

---

[1] All citations to the supplemental compendium of evidence (ECF No. 80-2) follow the page number following "COMPENDIUM OF EVIDENCE REDACTED- PAGE."

[2] Pages 33:7–36:6; 36:20–25; 37:5–39:25; 43:1–45:5; 45:17–21; 68:15–25; and 142:1–143:25.

contain confidential business information and should be redacted. Foust states that the redacted portions of the deposition transcript discuss Centrex's proprietary business methods and processes, which include (1) Centrex's "workflows for various collections scenarios"; (2) "the specific campaigns that Centrex uses for AMR"; (3) "Centrex's operational and quality assurance capabilities based on its use of its proprietary billing system as well as its use of LiveVox"; and (4) "the specifics of the procedure by which Centrex trains Omega personnel assigned to Centrex regarding HIPAA . . . [including] the administrative, physical, and technical safeguards Centrex implements." (*Id.* ¶¶ 21–24.)

Exhibit 12. AMR seeks to file under seal the "Outbound Training Process" PowerPoint presentation that Centrex uses to train its representatives on its outbound call procedures. Foust states that the presentation contains confidential training materials that Centrex uses to train call center service representatives. (Foust Decl. ¶ 9.) According to Foust, the presentation

> reflects critical information about how Centrex trains and manages, in pertinent part, the [offshore] call-representatives furnished by Omega. The nuanced training details are proprietary and confidential, and ensure that offshore workforce members (to wit call center representatives) are properly trained to manage, triage, and document phone calls and facilitate payments and resolve payment issues and disputes, a key component of Centrex's value proposition and a market differentiator.

(*Id.* ¶ 10.)

The Court finds compelling reasons to seal the Exhibits. Foust's declaration establishes that the public disclosure of the redacted information contained in Exhibits 7, 9, and 12 would substantially harm Centrex by placing Centrex at a significant competitive disadvantage. (Foust Decl. ¶¶ 11, 17, 25.) AMR has met its burden to show compelling reasons to seal Exhibits 7, 9, and 12 to the Marder Declaration.

//
//
//

### 2. Credence

AMR argues that Exhibits 13 and 15 to the Marder Declaration contain confidential business information of Credence that must be filed under seal.[3] The Exhibits consist of call scripts used by Credence's customer service representatives and excerpts from the deposition transcript of Karan Negi, who is the CEO of Credence.[4] AMR provides Negi's declaration as factual evidence supporting its sealing request. (Negi Decl., ECF No. 80-2 at 162–64.) According to Negi, the information requested to be sealed include "internal policies that are not known outside of the business, which have value to both the business and its competitors and required a substantial amount of effort and money to develop." (*Id.* ¶ 11.) Negi states that the information discussed in the redacted parts of the deposition is kept confidential at Credence and is not available to the public. (*Id.* ¶ 12.) Negi's declaration establishes that the public disclosure of the Exhibits can harm Credence's competitive standing if disclosed to the public. Compelling reasons exist to maintain the requested information under seal.

### 3. BACS

AMR requests to seal BACS's internal policies and procedures for its call center operations, filed as Exhibit 18 to the Marder Declaration. AMR provides the declaration of Kelly Wilson, who is the Director of Operations for BACS, in support of the sealing request. (Wilson Decl., ECF No. 80-2 at 165.) Wilson states that Exhibit 18 consists of "BACS' internal policies and procedures for its call center operations, including scripts drafted by BACS for training and use by its call center representatives." (*Id.* ¶ 4.) According to Wilson, the disclosure of Exhibit 18 "would cause substantial harm to the company as they contain proprietary policies, training[,] and scripts, which give [BACS] a

---

[3] Credence contracted with AMR to provide collection services. (Negi Depo. 20:15–25, 21:13–15, ECF No. 80-2 at 69–109.)

[4] As to the transcript of the deposition of Negi, AMR requests to redact pages 32:12–33:16; 33:25–43:5; 43:19–55:19; and 73:3–9 of the copy of the transcript to be filed for public disclosure. As to the call scripts, AMR requests that the exhibit be sealed in its entirety.

competitive advantage over [its] competitors." (*Id.* ¶ 5.) Wilson's declaration establishes that the public disclosure of the Exhibit can harm BACS's competitive standing if disclosed to the public. AMR has met its burden to show compelling reasons to seal Exhibit 18.

### 4.    Wakefield

AMR requests to seal an outbound call opening script produced by Wakefield, filed as Exhibit 19 to the Marder Declaration. AMR submits the declaration of Karen Scheibe Eliason, who is the Chief Compliance Officer of Wakefield, as evidence supporting its sealing request. (Eliason Decl., ECF No. 80-2 at 167–70.) Eliason states that Wakefield developed the script with AMR based on "a significant amount of review and consultation" of federal, state, and city rules and regulations, and thus its disclosure to the public will cause "irreparable damage" to Wakefield. (*Id.* ¶¶ 9–16, 23.) Eliason's declaration establishes that the public disclosure of the Exhibit can harm Wakefield's competitive standing if disclosed to the public. AMR has met its burden to show compelling reasons to seal Exhibit 19. The Court finds compelling reasons to seal the Exhibit.

## B.    Protected Personal Information

AMR next seeks to file under seal information that contain putative class members' sensitive personal information. This includes (1) patient care reports affiliated with two ambulance services that AMR provided to Mendell in 2017 and 2018, attached as Exhibits 10 and 11 to the Marder Declaration; (2) a list of sample audio recordings of calls with putative class members throughout the class period, attached as Exhibit P1 to the Declaration of Dr. Bhaskar Patil and Exhibit 1 to the Declaration of Joshua Swigart; and (3) Mendell's sensitive personal information including his social security number, date of birth, and address contained in Exhibit 14 to the Marder Declaration.

Compelling reasons may exist to seal protected health information and other personal information that may be abused if disclosed to the public. *See Hendricks v. Aetna Life Ins. Co.*, No. CV1906840CJCMRWX, 2019 WL 9054346, at *4 (C.D. Cal. Nov. 7,

2019) (finding compelling reasons to seal "personal health information as required by the Health Insurance Portability and Accountability Act (HIPAA)"); *see also Stafford v. Rite Aid Corp.*, No. 17-CV-1340-AJB-JLB, 2019 WL 3818015, at *1 (sealing personal information under Fed. R. Civ. P. 5.2).

Here, AMR submits as evidence the declaration of Lynsey Henkel, who is the Privacy Officer and Compliance Director for AMR's parent company Global Medical Response. (Henkel Decl., ECF No. 80-2 at 159–61.) Henkel states that patient care reports contain "confidential and HIPAA-protected personal health information including the patient's medical condition and the circumstances surrounding their medical transport." (Henkel Decl. ¶ 5.) Henkel also states that the call recordings at issue "contain confidential and HIPAA-protected [personal health information]," in particular, "the fact that participants on the calls were provided medical services by AMR." (*Id.* ¶ 8.) Henkel's declaration provides evidence that "[b]ased on [her] experience as the Privacy Officer and Compliance Director for GMR, . . . the public disclosure of this [information] would amount to a breach of privacy" for the individuals involved. (Henkel Decl. ¶ 9.) Social security number, date of birth, and address of Plaintiff are also sensitive personal information that risks abuse if disclosed to the public. The Court finds compelling reasons to seal putative class members' sensitive personal information.

## IV.   CONCLUSION

The Court **GRANTS** AMR's motion to seal. (ECF No. 80.) The Court directs the Clerk of the Court to accept and **FILE UNDER SEAL** the lodged documents. (ECF Nos. 47-2, 47-3, 82.)

**IT IS SO ORDERED.**

**DATED: March 1, 2021**

Hon. Cynthia Bashant
United States District Judge