# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MENDELL,<br><br>                Plaintiff,<br><br>  v.<br><br>AMERICAN MEDICAL RESPONSE, INC.,<br><br>                Defendant. | Case No. 19-cv-01227-BAS-KSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO CERTIFY CLASS (ECF No. 49)** |

    Defendant American Medical Response (AMR) provides ambulance transportation services to patients. Plaintiff Michael Mendell used AMR's ambulance but could not pay for it in time. AMR began calling Mendell on a recorded line to collect the ambulance fees. Mendell brought a putative class action against AMR, alleging that AMR violated California's Invasion of Privacy Act (CIPA), Cal. Penal Code § 630 *et seq.*, by recording the collection calls without first obtaining consent from the members of the proposed classes. Mendell moves to certify the class for each claim he raises under sections 632 and 632.7 of CIPA for class-wide damages and injunctive relief. Because the section 632 class fails to satisfy the commonality, typicality, and predominance requirements of Federal Rule of Civil Procedure 23, and the section 632.7 class fails to satisfy the typicality and predominance requirements, the Court denies Mendell's motion.

## I. BACKGROUND

### A. Mendell's Transactions with AMR

Mendell was transported in AMR's ambulance on January 19, 2017.[1] Mendell could not pay AMR for the ambulance fees in time. AMR referred Mendell's account to a third-party collection agency, Credence Resource Management. Credence's customer representative placed two calls to Mendell's phone number: on May 15, 2017, and May 17, 2017.[2] The first call went to voicemail.[3] The second call was picked up, and the representative immediately disclosed that he was calling "from a recorded line."[4] The call got disconnected.

Mendell used AMR's ambulance services again on October 28, 2018.[5] Mendell also failed to pay AMR in time for those services. AMR placed three collection calls to Mendell.[6] All calls were recorded. During the first call on November 12, 2018, AMR's representative identified himself, and asked Mendell for his address and personal identifying information.[7] Mendell refused to verify the information and told the caller that he should speak to his lawyer.[8] The following day, on November 13, 2018, AMR placed another call to Mendell, which went to his voicemail.[9] The last call that AMR placed on November 14, 2018, was answered by Mendell.[10] In that call, as soon as AMR's representative identified herself, the call got disconnected.

//
//

---

[1] (Mendell Dep. (May 2020) at 122:22–123:23, Marder Decl., Ex. 5, ECF No. 62-1.)
[2] (Negi Dep. at 79:24–81:1, Marder Decl., Ex. 13; Marder Decl., Ex. 14 at 5–6.)
[3] (Mendell Dep. (May 2020) at 124:17–25.)
[4] (Negi Dep. at 85:8–86:18; Mendell Dep. (May 2020) at 127:22–128:13.)
[5] (Swigart Decl. ¶ 19, ECF No. 49-2; Mendell Decl. ¶ 5, ECF No. 49-17; 2018 Patient Care Report, ECF No. 82-3.)
[6] (Mendell Decl. ¶ 6.)
[7] (Swigart Decl. ¶ 20; Ex. P1A to Patil Decl., AMR_MEN_VOL000283.)
[8] (Ex. P1A to Patil Decl.)
[9] (Swigart Decl. ¶ 21; Ex. P1C to Patil Decl., AMR_MEN_VOL000284.)
[10] (Swigart Decl. ¶ 22; Ex. P1D to Patil Decl., AMR_MEN_VOL000285.)

### B. AMR's Call Operations

AMR utilized three scripts for the collection calls during the relevant time period, each named Patient Business Services 1 ("PBS1"), Patient Business Services 2 ("PBS2"), and Customer Care ("CC"). The class claims are based on PBS2, which instructs a customer representative to verify the account holder's billing address and date of birth before disclosing that the call is recorded. (ECF No. 49-4.) Mendell does not challenge PBS1 and CC, which instruct a customer representative to disclose that "all calls are recorded," before asking to speak with the account holder. (ECF Nos. 49-3, 49-5.)

AMR used PBS1 for outbound calls until July 31, 2018.[11] AMR began training its call representatives with PBS2, starting on July 15, 2018, and phased out PBS1 by July 31, 2018.[12] AMR used PBS2 for outbound calls placed between July 15, 2018, and July 31, 2019.[13] AMR began using the third script, CC, in April 2019.[14]

### C. Mendell's Suit and Motion for Class Certification

After discovering that AMR recorded his calls, Mendell brought a putative class action against AMR. Mendell alleges that AMR recorded the collection calls without the class members' consent, in violation of sections 632 and 632.7 of California's Invasion of Privacy Act (CIPA). (Second Am. Compl. (SAC) ¶¶ 19–27.) Mendell moves to certify the following class and subclass under Rules 23(b)(2) and 23(b)(3):

> **The HIPAA[15] Confidential Communication Class**
> All persons in California, that never called Defendant, whose first call from Defendant was recorded without their consent by Defendant and/or its agent/s from July 1, 2018 through July 31, 2019 (the date when AMR modified its practice to notify callers of recording at the outset of the call).

---

[11] (Patil Dep., Marder Decl., Ex. 9 at 165:22–23.)
[12] (Patil Decl. ¶ 7, ECF No. 62-1 at 541; Connolly Dep. at 85:12–25, Marder Decl., Ex. 7; Patil Dep. at 131:7–13.)
[13] (Patil Decl. ¶ 7; Patil Dep. at 127:23–128:20.)
[14] (Patil Dep. at 166:1–6.)
[15] Health Insurance Portability and Accountability Act (HIPAA), Pub.L. 104–191, 110 Stat. 1936 (codified as amended in scattered sections of 42 U.S.C.).

- 3 -

**The Cellular Phone Communication Sub-Class**
All persons in California, that never called Defendant, whose first call from Defendant to their cellular phone was recorded without their consent by Defendant and/or its agent/s from July 1, 2018 through July 31, 2019 (the date when AMR modified its practice to notify callers of recording at the outset of the call).

(Pl.'s Mot., ECF No. 49 at 2.) As class-wide relief, Mendell seeks statutory damages of $5,000 per violation[16] and an injunction barring AMR "from recording future telephone conversations without first advising the other party to those conversations at the outset of the call and before recording commences that such calls are being recorded." (*Id.* at 3.)

AMR filed its response in opposition to the motion for class certification (ECF No. 60), and Mendell filed a reply. (ECF No. 67.) AMR filed a sur-reply with the Court's leave. (ECF No. 79.) The Court finds Mendell's motion for class certification suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).

## II. LEGAL STANDARD

Motions for class certification proceed under Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) provides four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequate representation"). Fed. R. Civ. P. 23(a).

The proposed classes must also satisfy one of the subdivisions of Rule 23(b). Here, Mendell seeks to maintain the class action under Rules 23(b)(2) and 23(b)(3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds

---

[16] (Pl.'s Mem. at 9:4–6, ECF No. 49-1.)

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To certify a class under Rule 23(b)(3), "the court [must] find[] that the [common questions] predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* 23(b)(3). The relevant factors in the 23(b)(3) inquiry include the class members' interest in individually controlling the litigation, other litigation already commenced, the desirability (or not) of consolidating the litigation in this forum, and manageability. *Id.* 23(b)(3)(A)–(D).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* The court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). A weighing of competing evidence, however, is inappropriate at this stage of the litigation. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

### III.   ANALYSIS
####   A.   Rule 23(a) Requirements
#####        1.   Numerosity

For an action to be certified as a class action, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "[t]he numerosity requirement is not tied to any fixed numerical threshold[,] . . . [i]n

general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Id.* at 651. Here, Plaintiff's expert witness identifies 6,000 individuals that meet the criteria of the HIPAA Confidential Communication Class ("§ 632 Class") and 4,500 individuals that meet the criteria of the Cellular Phone Communication Sub-Class ("§ 632.7 Class"). The Court finds that the proposed classes satisfy the numerosity requirement.

### 2. Adequacy

AMR argues that Mendell is not an adequate class representative because he is pursuing a parallel litigation against AMR in state court and lacks the requisite knowledge to vigorously represent the interests of the class. Under Rule 23(a)(4), the named representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether this adequacy requirement is met, the Court asks: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. For the reasons stated below, the Court finds that Mendell's representation is not deficient under either criterion.

#### i. Parallel State Court Action

Courts generally decline to find that the class fails to meet the adequacy requirement under Rule 23(a)(4) unless a party presents concrete evidence of a conflict of interest. *See Howell v. Advantage RN, LLC*, No. 17-CV-0883 JLS (BLM), 2018 WL 3437123, at *7 (S.D. Cal. July 17, 2018) ("[C]onflicts that are 'merely speculative or hypothetical will not affect the adequacy inquiry.'"); *see also* 1 Newberg on Class Actions § 3:58 (5th ed. rev. Dec. 2020) ("A conflict must be manifest at the time of certification rather than dependent on some future event or turn in the litigation that might never occur."). For example, one district court in this circuit declined to find that the proposed class action failed the adequacy requirement because

> any potential conflict of interest was "very speculative" where a conflict would require the following confluence of circumstances: (1) the parallel case to be certified as a class action, (2) the plaintiffs in both cases to obtain favorable judgments, and (3) the defendants to be unable to satisfy the judgments.

*Allen v. Hyland's Inc.*, 300 F.R.D. 643, 665 (C.D. Cal. 2014) (citing *Sheftelman v. Jones*, 667 F. Supp. 859, 865 (N.D. Ga. 1987)). Similarly, here, AMR points to Mendell's individual action in the San Diego Superior Court against AMR, without providing any evidence that Mendell is likely to advance his own interests at the cost of the interests of the class. Without evidence of manifest conflict, the Court declines to find that Mendell's parallel, state litigation renders his representation inadequate in this case.

### ii. Mendell's Credibility and Understanding of the Class Action

AMR also challenges the adequacy of Mendell's role as class representative on the ground that Mendell lacks credibility and adequate knowledge about key aspects of the litigation. Challenges to credibility or integrity of the proposed class representative are rarely upheld. 1 Newberg on Class Actions § 3:68 (5th ed. rev. Dec. 2020). While AMR points out conflicting testimonies of Mendell, the record does not suggest that Mendell's credibility is "so severely undermin[ed] . . . that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011).

In addition, the Ninth Circuit does not "impose a knowledge requirement on the part of the class representatives." *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 118 (C.D. Cal. 2007). Mendell states that he understands the general duties of acting as a class representative and is willing and able to perform them. (*See* Mendell Decl. ¶¶ 13–14.) AMR's evidence does not disprove Mendell's contention. That is enough to satisfy Rule 23(a)(4) as to Mendell's representation of the class. *See Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (finding that class representative satisfied the adequacy requirement because the

representative "underst[ood] his duties and [was] . . . willing and able to perform them," and "[t]he Rule d[id] not require more").

AMR does not challenge the adequacy of class counsel, and the record does not suggest that Mendell's counsel fails to satisfy the adequacy requirement. The proposed representation by Mendell and class counsel satisfies the adequacy requirement under Rule 23(a)(4).

### 3. Commonality

Rule 23(a)(2) requires a party seeking to certify the class to set forth "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The common contention, however, "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

#### i. § 632 Class

Section 632 of CIPA prohibits the recording of a conversation without consent from all parties, but only if the conversation constitutes a "confidential communication." Cal. Penal Code § 632(a). The statute defines "confidential communication" as one that takes place "in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto," excluding certain communications made in public "or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." *Id.* § 632(c). Courts apply an objective standard to determine whether a conversation qualifies as "confidential." *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 772–77 (2002) (holding that

for a conversation to qualify as "confidential" under section 632, a party to a recording must have an "objectively reasonable expectation that the conversation is not being overheard or recorded"); *accord Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 463 (9th Cir. 1997) ("Application of the statutory definition of 'confidential communication' turns on the reasonable expectations of the parties."). The reasonableness of one's expectation of privacy over a conversation is generally a question of fact. *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396 (2011) (*CashCall I*). Numerous factors are relevant to the reasonableness inquiry under section 632:

> whether the call was initiated by the consumer or whether a corporate employee telephoned a customer, the length of the customer-business relationship, the customer's prior experiences with business communications, and the nature and timing of any recorded disclosures.

*Id.*

For example, in *Hataishi v. First American Home Buyers Protection Corp.*, 223 Cal. App. 4th 1454 (2014), a state appellate court declined to certify a § 632 class, finding that individualized inquiries into "the length of the customer-business relationship [and] the [class members'] prior experiences with business communications" were necessary to determine whether each class member held an objectively reasonable belief that his or her call was confidential. *See id.* at 1467. Similarly, in *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112, 130 (2014) (*CashCall II*), a state appellate court affirmed the decertification of a § 632 class upon finding that it was necessary to consider the class members' "different experiences regarding the timing, extent, and nature of the monitored calls and of the Call Monitoring Disclosure, and . . . prior experiences with business communications." *Id.* at 123. A federal district court in this circuit has also declined to certify a § 632 class on similar grounds. *Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV 14-6256 JGB (JPRx), 2016 WL 3456939 (C.D. Cal. Apr. 14, 2016) ("The individual nature of the objective expectations inquiry preclude[d] the [c]ourt from being able to resolve any potential common issues involving those putative [CIPA § 632] [c]lass members.").

Here too, assessing the reasonableness of a class member's expectation of privacy necessitates individualized inquiries into the class member's prior experiences and relationships with AMR. Mendell's own history with AMR demonstrates the necessity of such individualized inquiry. Evidence suggests that Mendell received a call from a collection agency regarding the debt he incurred to AMR in 2017, in which Mendell received a recording notice. (Negi Dep. at 85:8–86:10; Mendell Dep. (May 2020) at 127:22–129:25.) Mendell testified that he was familiar with the creditors' practice of operating the calls on recorded lines based on his prior experiences with other creditors. (Mendell. Dep. (Mar. 2020) at 147:17–148:2, Ex. 3 to Marder Decl., ECF No. 62-1.) While Mendell argues that the above evidence does not conclusively show that his expectation of confidentiality was unreasonable, that is not the point. The point is that individualized inquiries into the reasonableness of each class member's individual expectation of confidentiality over his or her call(s) with AMR are unavoidable to resolve the claims raised under section 632. Because "confidential communication" is an indispensable element of a section 632 claim, class members' claims raised under that section are not capable of being resolved on a class-wide basis.

Mendell fares no better with his argument that the calls at issue constitute confidential communication by law because AMR placed them to collect medical debt. Mendell cites to no authority that has applied CIPA to hold that any call placed by a medical services provider automatically qualifies as confidential communications. Moreover, Mendell's suggested approach—to declare that certain categories of conversations automatically qualify as confidential communications under section 632 based on their contents—is incompatible with the California Supreme Court's holding in *Flanagan*. There, the court resolved a split in the lower courts' differing interpretations of section 632 and clarified that the focus of the confidentiality inquiry should be placed on "the actual conversation, not its content." *See Flanagan*, 27 Cal. 4th at 774 (holding that section 632(c) "prohibit[s] unconsented-to eavesdropping or recording of conversations regardless

- 10 -

19cv1227

of whether the party expects that the *content of the conversation* may later be conveyed to a third party").

In sum, the individualized nature of the confidentiality analysis defeats the commonality requirement as to the § 632 class.

### ii.   § 632.7 Class

Unlike section 632, section 632.7 does not require reasonable expectation of confidentiality as an element; section 632.7 prohibits all intentional recordation of an intercepted or received communication transmitted from and/or to a cellular device. Cal. Penal Code § 632.7(a); *see Flanagan*, 27 Cal. 4th at 771, n.2 ("Section 632.7['s prohibition of] . . . intentionally intercepting or recording communications involving cellular telephones and cordless telephones . . . applies to all communications, not just confidential communications."). Therefore, the individualized nature of the confidentiality analysis does not affect the commonality analysis as to the § 632.7 class.

Mendell sets forth a common question of law applicable to the § 632.7 class: whether, to avoid liability under § 632.7, a business must provide notice that a call is being recorded before any recording begins. Mendell suggests that the California Supreme Court held as much in *Kearney v. Salomon Smith Barney*, 39 Cal. 4th 95 (2006). There, the court held that a business would not violate section 632.7 if it "adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call." *Id.* at 118. AMR argues that "outset" is not defined in *Kearney* and that it does not necessarily lend to the interpretation that the recording notification be the very first thing stated on a recorded call. AMR disregards that how to interpret *Kearney* itself is a common question of law that satisfies Rule 23(a)'s commonality requirement.

AMR also argues that the § 632.7 class has no claim because section 632.7 applies only to third-party eavesdroppers, citing the legislative history behind the enactment of section 632.7 and a state appellate court's decision in *Smith v. LoanMe, Inc.*, 43 Cal. App. 5th 844, 855 (2019) ("The Legislature was not interested in recording by parties. The

- 11 -

Legislature was targeting recording by eavesdroppers[.]"), *review granted*, No. S260391, 2020 WL 1608928, at *1 (Cal. Apr. 1, 2020).[17] Again, the Court's task at the class certification stage is not to resolve the merits of the underlying claim. Whether section 632.7 bans recording of a call even where no third-party eavesdropper is involved is a common question of law that satisfies the commonality requirement.

Therefore, Rule 23(a)'s commonality requirement is satisfied as to the § 632.7 class but not as to the § 632 class.

### 4. Typicality

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citing *Hanon*, 976 F.2d at 508). "[T]ypicality insists that the class representative be a member of the class and have claims similar to those of other class members, and the requirement rests upon the belief that such a representative, pursuing her own interests, will pursue the class's as well." *Tschudy v. J.C. Penney Corp., Inc.*, No. 11CV1011 JM (KSC), 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015) (citing Newberg on Class Actions § 3:28 (5th ed. 2011)). For this reason, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508; *accord Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) ("Defenses unique to a class representative counsel against class certification only where they 'threaten to become the focus of the litigation.'")

---

[17] Although the matter is still pending in the California Supreme Court, the Court need not stay the present action because the Court denies Mendell's motion for class certification.

Mendell argues that his claim is typical of the proposed classes because he suffered the same harm in the same manner as the putative class members and that he is not subject to any unique defense. AMR, however, highlights that the first call Mendell received from AMR took place on May 17, 2017, when the third-party collection agency, Credence, called Mendell to collect the unpaid fees charged for Mendell's use of AMR's services in 2017. The proposed classes are limited to those individuals who received their first call from AMR from July 1, 2018 through July 31, 2019. Therefore, AMR contends that Mendell is not a member of the classes that he seeks to certify.

AMR's defense will likely apply to Mendell. Credence called Mendell's cell phone number in 2017 to settle the unpaid balances he owed to AMR. (Negi Dep. at 85:8–86:18.) Mendell does not dispute that the number retained in Credence's record is his. At deposition, Mendell first stated that he did not remember receiving the call in 2017 but later stated that he hung up because he did not want his call to be recorded. (Mendell Dep. (May 2020) at 128:6–13, 129:20–25.) Although Mendell argues that the 2017 call is irrelevant because it was Credence, not AMR, that placed the call, at this stage, the question is not whether AMR's defense succeeds. The question is whether AMR has a unique defense against Mendell that can distract from issues common to the class, and AMR has shown as much.

The Court also notes that the evidence of Mendell having received a call in 2017 regarding his debt to AMR may also undermine a central element to the class claims—that the recording of the call was made without the call recipient's consent. As will be discussed more in the predominance analysis below, *see infra* Part III.B., a call recipient's prior exposure to a recording notice is relevant to determining whether the call recipient impliedly consented to the challenged recording. *See, e.g.*, *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013) (considering prior exposure to the recording notice as a relevant factor to determine consent). Because AMR's unique defense against Mendell may undermine the consent element that applies to both sections 632 and 632.7, the Court finds that the typicality requirement is not satisfied. *See* 1 Newberg on Class Actions §

3:45 (5th ed. rev. Dec. 2020) ("A unique defense that threatens to undermine one or more substantive elements of a central claim may also undermine typicality.").

The Court concludes that the commonality requirement is not satisfied as to the § 632 class and the typicality requirement is not satisfied as to both classes.

**B.  Rule 23(b)(3) Predominance Requirement**

While the Court's Rule 23(a) analysis is enough to reject Mendell's motion for class certification, the Court also finds that the predominance requirement is not satisfied as to the 23(b)(3) class. Mendell seeks to maintain the class action under Rule 23(b)(3) to aggregate class members' claims for money damages. Under Rule 23(b)(3), a plaintiff seeking to certify a 23(b)(3) class must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For the purposes of conducting a Rule 23(b)(3) predominance analysis, "[a]n individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citing 2 Newberg on Class Actions § 4:50 (5th ed. 2012)). "The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1022). The predominance analysis does not hinge on the satisfaction of the commonality requirement under Rule 23(a)(2). Instead, the analysis checks whether common questions "present a significant aspect of the case" such that "there is clear justification"—in terms of efficiency and judicial economy—for resolving those questions in a single adjudication. *Hanlon*, 150 F.3d at 1022 (citation omitted); *see also Vinole*, 571 F.3d at 944 ("[A] central concern of

the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy."); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy.").

The predominance requirement is satisfied when a common nucleus of facts and law is the central feature of the litigation, and when "Plaintiffs have shown that there are plausible classwide methods of proof available to prove their claims." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 487 (N.D. Cal. 2011) (citation omitted); *see also Hanlon*, 150 F.3d at 1022. However, "[c]ommon questions do not predominate if the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues leading to an inordinate number of evidentiary hearings." *Kristensen*, 12 F. Supp. 3d at 1306 (citation omitted).

AMR argues that individualized questions of fact predominate over common ones because: (1) per AMR's policy, its scripts were implemented in overlapping periods; (2) advance disclaimer was given in some calls during the class period; and (3) some call recipients consented to the recording of the calls. First, according to AMR, the periods in which AMR implemented the three scripts sometimes overlapped with each other:[18]

| Script Name | Recording Disclaimer Before/After Personal ID | Implementation Period (per AMR policy) |
|---|---|---|
| PBS 1 | Before | 7/1/2018–7/31/2018 |
| PBS 2 | After | 7/15/2018–7/31/2019 |
| CC | Before | 4/1/2019– |

In other words, per AMR's policy, AMR implemented PBS 1 and PBS 2 from July 1, 2018, through July 15, 2018; and PBS 2 and CC from April 1, 2019, through July 31, 2019. AMR is correct that this evidence creates the need for individualized inquiries into which

---

[18] (*See supra* Part I.B.)

transcript was used for those overlapping periods. This deficiency is not dispositive of the predominance analysis because it may be made moot, as Mendell points out, by narrowing the class period to August 1, 2018, through March 31, 2019, when there was no official overlap in the implementation of the scripts. *Cf. In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1093 (C.D. Cal. 2015) (holding that "an over-inclusive class definition need not defeat certification entirely" because "[t]he court has the discretion to narrow the class to bring it within the requirements of Rule 23").

However, narrowing the class period cannot cure the second set of individualized issues—that not all calls that took place between August 1, 2018, through March 31, 2019, followed a uniform transcript. Out of the handful of "semi-random samples" selected by Mendell, three customers who participated in the calls labeled as P1E,[19] P1J,[20] and P1U[21] were given immediate, advance recording notice. The call labeled as P1E took place on January 24, 2019; P1J on November 14, 2018; and P1U on October 10, 2018—all within the revised class period in which Mendell alleges that PBS 2 was uniformly in effect per AMR's policy. (Ex. P1 to Patil Decl., ECF No. 82-11.) Evidence of these calls are critical because Mendell's theory hinges on the assumption that all class members received the same delayed recording notice, as prescribed by PBS 2, and thus no call recipient could have consented to the recordation of the first part of the phone calls. AMR's evidence casts doubt on this assumption. The evidence necessitates individualized inquiries into consent: in which of the 6,000 calls did AMR representatives give delayed recording notice? In which calls did call participants consent, expressly or impliedly, to the call being recorded? *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, No. 12-CV-01685-BAS(JLB), 2016 WL 2610107, at *7 (S.D. Cal. May 6, 2016) (finding that, given evidence that some customers were notified of the defendant's call recording practice, "individualized inquiries will be necessary to determine whether Hanson Pacific recorded

---

[19] (Ex. P1E to Patil Decl., AMR_MEN_VOL019685.)
[20] (Ex. P1J to Patil Decl., AMR_MEN_VOL008736.)
[21] (Ex. P1U to Patil Decl., AMR_MEN_VOL008493.)

calls 'without the consent of all parties'"), *aff'd sub nom. NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528 (9th Cir. 2019).

In sum, Mendell has not shown that common questions of law or fact predominate over individualized issues of notice and consent. Because the Court finds that the predominance requirement is not satisfied, the Court need not reach the superiority analysis. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008) (finding that the court "need not address whether a class action is a superior method of adjudicating plaintiffs' claims" where the predominance requirement was not satisfied).[22]

## IV.   CONCLUSION

Mendell's motion to certify the class (ECF No. 49) is **DENIED**.

**IT IS SO ORDERED.**

DATED:     March 22, 2021

Hon. Cynthia Bashant
United States District Judge

---

[22] Namely, the Court does not reach the merits of AMR's argument that the superiority requirement is not satisfied because Mendell has not identified an administratively feasible way to identify the class members. The Court notes that the Ninth Circuit has declined to require a "separate administrative feasibility prerequisite to class certification," holding that doing so would not be compatible with the language of Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017). In addition, where the dollar amounts are small, and class members do not have proof that they fit the class definition, courts have allowed proof by affidavit. *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *15 (N.D. Cal. June 17, 2014).